UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| WESLEY W., Plaintiff, | ) | |
| v. | ) | No. 1:25-cv-01784-JPH-TAB |
| FRANK BISIGNANO COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant. | ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S BRIEF**

## I. Introduction

Plaintiff Wesley W. appeals the Social Security Administration's third denial of his application for disability benefits. [Filing No. 15.] The Administrative Law Judge found that Plaintiff had severe mental impairments but could perform work with restrictions. [Filing No. 11-14, at ECF p. 12-29.] Plaintiff argues that the ALJ erred in evaluating medical opinions and assessing his ability to work. The Commissioner argues that the ALJ supported her decision with substantial evidence, and while Plaintiff disagrees with the ALJ's findings, Plaintiff has identified no error. [Filing No. 18.] While the SSA's initial two unfavorable decisions contained errors requiring remand, the latest decision is thorough and well supported. Accordingly, Plaintiff's request for remand [Filing No. 15] should be denied.

## II. Background

Plaintiff's application for Social Security disability and child disability benefits alleged that he has been disabled since December 31, 2012. The SSA denied Plaintiff's claims initially and upon reconsideration. The SSA convened three administrative hearings—on November 28, 2017;

September 13, 2021; and March 6, 2024—and issued unfavorable decisions following each hearing. This is Plaintiff's third appeal. The first two appeals ended when the parties agreed to remand. Following the most recent remand, the SSA re-assigned the claim to a new ALJ and convened a third hearing. The new ALJ denied the claim on May 17, 2024. The Appeals Council declined review. The Court now reviews the May 2024 decision.

The ALJ determined that Plaintiff was not disabled under the SSA's five-step method. At step one, the ALJ concluded that, since the alleged onset date, Plaintiff had not engaged in substantial gainful activity. [Filing No. 11-14, at ECF p. 15.] At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: attention deficit hyperactivity disorder, anxiety, depression, and an intellectual disorder. [Filing No. 11-14, at ECF p. 15.] At step three, the ALJ concluded that Plaintiff's severe impairments did not meet or medically equal a listed impairment in 20 C.F.R. 404, Subpart P, App'x. 1. [Filing No. 11-14, at ECF p. 15-16.] Before step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to work. The ALJ concluded that Plaintiff can perform a full range of work at all exertional levels with the following limitations:

> [T]he claimant can understand, remember, and carry out simple, repetitive instructions; and maintain adequate attention and concentration for said tasks and instructions. The claimant can have occasional interaction with co-workers and supervisors for basic work tasks and questions but can have no work-related contact with the general public. The claimant works best independently of others, or in small groups of 3-4. The claimant can have no fast-paced production or quota, meaning no tandem work assignments, machine regulated work, or hourly production requirements. He can tolerate occasional changes in the work environment.

[Filing No. 11-14, at ECF p. 18.]

At step four, the ALJ concluded that Plaintiff has no past relevant work. [Filing No. 11-14, at ECF p. 28.] At step five, the ALJ concluded that, prior to attaining age 22 and given

Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform, including a warehouse worker, janitor, and dishwasher. [Filing No. 11-14, at ECF p. 28-29.] Ultimately, the ALJ concluded that Plaintiff was not disabled.

## III. Discussion

The Court reviews the ALJ's decision to determine whether the factual findings are supported by substantial evidence. *See, e.g.*, *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). "[I]t is the role of the Court to ensure that the ALJ builds a logical bridge between the evidence and her conclusions, and that the ALJ meaningfully confronts and explains departure from evidence in the record that would support additional limitations." *Sabrina P. v. Kijakazi*, No. 1:20-cv-02814-TAB-TWP, 2021 WL 6061749, at *3 (S.D. Ind. Nov. 24, 2021). However, ALJs are "subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Moreover, "[t]he court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner. Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

The issues Plaintiff raises hinge primarily on the ALJ's evaluation of the opinions of agency consultants. Because Plaintiff filed for disability before March 17, 2017, the ALJ's assessment of opinion evidence is governed by 20 C.F.R. § 404.1527. When weighing medical

opinions, the ALJ must consider statutory factors—which include the length, nature, and extent of the treatment relationship; whether the physician supported his opinion with sufficient explanation; whether the physician specializes in the medical conditions at issue; whether the opinion is supported by medical findings; and whether the opinion is consistent with the record as a whole. 20 C.F.R. § 404.1527(c). However, as long as the ALJ's reasoning is minimally articulated and well supported, the ALJ "need not explicitly consider every factor." *Yokosh v. Bisignano*, 170 F.4th 631, 639 (7th Cir. 2026); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("That the ALJ did not march through each § 404.1527(c) factor in evaluating the non-treating sources is a non-issue because 'not every factor for weighing opinion evidence' applied in this case."). "It is enough for an ALJ to summarize the findings of a non-treating source's opinion and note that those findings are not corroborated by objective evidence in the record." *Grotts*, 27 F. 4th 1273 at 1277 (citing *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014)). This is a "lax" and "very deferential standard." *Yokosh*, 170 F.4th at 639.

**A. Opinion regarding listing-level impairments**

As long as an ALJ provides a sound explanation, she may reject a medical expert's opinion that a claimant's impairments meet or equal a listing. *See Green v. Berryhill*, No. 2:16-cv-127, 2017 WL 4250861, at *7-8 (N.D. Ind. Sept. 26, 2017) (affirming an ALJ's decision giving no weight to a medical expert's opinion that a claimant's impairments met two mental health listings where the ALJ articulated his reasoning for doing so); 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments[,] the final responsibility for deciding these issues is reserved to the

Commissioner."). In the present case, the ALJ adequately supported her rejection of an opinion that Plaintiff's impairments are listing level.

Agency consultant Betty Borden, Psy.D., testified at the March 2024 hearing that Plaintiff met Listings 12.04 and 12.08—the listings for depressive and personality disorders. Both listings may be met if there is medical evidence of symptoms and one extreme or two marked limitations of the Paragraph "B" criteria, which pertain to mental functioning relevant to a work setting. 20 C.F.R. 404, Subpart P, App'x.1 § 12.04 (requiring medical documentation of specified depressive symptoms and either satisfaction of "B" criteria or a finding that the mental disorder is "serious and persistent"), § 12.08 (requiring medical documentation of specified personality or impulse-control disorder symptoms and satisfaction of "B" criteria). Dr. Borden rated two Paragraph "B" criteria—Plaintiff's ability to interact with others and adapt or manage oneself—as markedly limited and rated the remaining "B" criteria as moderately limited. Dr. Borden testified that she based the marked limitations primarily on Plaintiff's testimony and information regarding Plaintiff's arrest. [Filing No. 11-14, at ECF p. 77.]

The ALJ gave Dr. Borden's opinion "little weight." [Filing No. 11-14, at ECF p. 25.] The ALJ noted that Dr. Borden based her opinion that impairments met Listing 12.08 on Plaintiff's outbursts, but treatment records showed that those outbursts were controlled by medication. The ALJ also concluded that Dr. Borden over-emphasized Plaintiff's arrest for disorderly conduct, which occurred when Plaintiff was intoxicated. She also discounted this opinion due to reports from Plaintiff's mother, who described Plaintiff as doing well overall.

The ALJ further noted that Dr. Borden based on her opinion that Plaintiff met Listing 12.04 on evidence of depressed mood, sleep disturbance, feelings of worthlessness, difficulty concentration, difficulty sleeping, and psychomotor agitation, which were documented in records

from 2017 to 2018. [Filing No. 11-14, at ECF p. 25.] The ALJ discussed treatment records from 2017 and 2018 that contradicted Dr. Borden's assessment—such as records documenting Plaintiff's reports of getting along with others, not feeling angry or irritable, and not wanting therapy because he was feeling fine and had no complaints. The ALJ also discussed later records, such as a 2019 record in which Plaintiff denied thoughts of hurting himself or others and a 2020 record in which Plaintiff reported that his medications were working, and he was doing well, and had no issues. The ALJ also discussed a record from 2021 that—unlike records from 2019 and 2020—noted difficulty focusing, thinking, communicating, and comprehending and anxiety in social situations. However, the ALJ noted that, at that same 2021 appointment, Plaintiff asked his provider for a letter endorsing his claim for disability. The ALJ also discussed a 2023 record that documented reports of worsening anxiety while Plaintiff was off his medication. Thus, the ALJ's discussion satisfied the minimal articulation requirement for devaluing Dr. Borden's opinion that Plaintiff met Listings 12.04 and 12.08.

Plaintiff argues that the ALJ erred by not mentioning Listing 12.08, which pertains to personality disorders, at step three. The Commissioner counters that the ALJ adequately addressed this listing elsewhere in her decision. Quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004), Plaintiff argues that "where an ALJ omits reference to the applicable listing and provides nothing more than a superficial analysis, reversal and remand is required." [Filing No. 15, at ECF p. 19.] However, a closer reading of *Rice* reveals that this issue is more nuanced and that the Seventh Circuit rejected Plaintiff's argument of form over substance. *See Rice*, 384 F.3d at 369-70 ("As to Rice's argument that the ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here."). In *Rice*, the ALJ's decision omitted discussion of a potentially applicable listing, but it sufficiently

addressed evidence essential to the listing. Therefore, the Seventh Circuit found that the ALJ's step-three determination was supported by substantial evidence, even though the decision never explicitly invoked the listing that it implicitly ruled out. *Id.* at 370 ("[W]e can safely conclude the ALJ considered and applied the appropriate listing, although he nowhere expressly referred to it in his February decision.").

In the present case, any such step three error is harmless, because the ALJ's decision addresses Dr. Borden's opinion related to Listing 12.08 at a later step, as discussed above, and assesses the Paragraph "B" criteria—which is an essential element of the personality disorder listing—when assessing other mental health listings at step three. *See Zellweger v. Saul*, 984 F.3d 1251, 1254 (7th Cir. 2021) (finding that "the sequential process is not so rigidly compartmentalized" and allowing a court to review "an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision"). At step three, the ALJ thoroughly discussed other mental health listings that—like Listing 12.08—require one extreme limitation or two marked limitations of Paragraph "B" criteria. [Filing No. 11-14, at ECF p. 15-18.] The ALJ found moderate limitations in all four categories—thus, the Paragraph "B" criteria is not satisfied.

As to understanding, remembering, or applying information, the ALJ noted that Plaintiff graduated high school with a regular diploma and demonstrated the ability to learn new things and follow directions during psychological exams. As to interacting with others, the ALJ discussed Plaintiff's conflicting reports regarding socializing with friends—noting reports that Plaintiff enjoyed spending time with friends, played sports, and got along well with others, as well as other reports that Plaintiff had no friends and became violent when frustrated. The ALJ also noted that Plaintiff's provider described him as pleasant and that he behaved appropriately

during the hearing. As to concentration, persistence, and maintaining pace, the ALJ noted that Plaintiff demonstrated the ability to focus and completed serial 3's without difficulty at the psychological exams and reported playing video games for hours. As for adapting and managing oneself, the ALJ noted that Plaintiff does not drive and lives with his parents. However, the ALJ also noted that Plaintiff told the psychological examiner that he is independent with personal care and that he mows the lawn after being shown how to make a pattern in the grass. The ALJ's discussion of Paragraph "B" criteria is more extensive than included here. The ALJ adequately articulated her basis for finding that Plaintiff's Paragraph "B" criteria are no more than moderately limited, and therefore her failure to explicitly invoke Listing 12.08 at step three is harmless.

Finally, Plaintiff argues that the ALJ erred by not providing Dr. Borden with records from Community Behavioral Health, Dr. Nicole Clark, and Dr. Mona Singh that she obtained after the hearing. However, the ALJ's decision discusses these records, and the ALJ was not obligated to seek an updated opinion from Dr. Borden. Plaintiff relies on the following provision from the SSA's internal policy manual: "When an ALJ receives new evidence after an ME has provided testimony or responded to interrogatories, the ALJ may ask the ME to review the new evidence to determine if it affects the ME's testimony or response." *Soc. Sec. Admin., Hearings, Appeals, & Litigation Law Manual (HALLEX)* § I-2-5-45, Action When Administrative Law Judge (ALJ) Receives New Evidence After a Medical Expert (ME) Has Provided an Opinion (Jan. 21, 2020), https://www.ssa.gov/OP_Home/hallex/I-02/I-2-5-45.html. As the Commissioner points out, the manual permits, but does not require, a second opinion. Moreover, an ALJ need not recontact a medical consultant unless the record contained inadequate information for the ALJ to render a decision, which is not the case here. *See Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018); *see*

*also Brenda S. v. Kijakazi*, No. 1:20-cv-01806-TAB-JRS, 2021 WL 3749048, at *5 (S.D. Ind. Aug. 25, 2021) ("[T]he regulations do not require an ALJ to recontact a doctor where there is adequate information to render a decision." (citing 20 C.F.R. § 404.1520b)).

The Commissioner also argues that the post-hearing evidence did "not indicate that Plaintiff's condition substantially changed." [Filing No. 18, at ECF p. 9.] According to Plaintiff's own summary, the post-hearing evidence documents that Plaintiff reported anxiety in social situations and difficulty with concentration and focus and was on medications for ADHD and anxiety in September 2021. [Filing No. 15, at ECF p. 21.] Plaintiff returned to this provider in April 2022 and reported having a lot of anxiety; that the medications were helping some; and that he did not go out due to anxiety. Plaintiff treated with a new mental health provider in February 2023 and reported that one medication was not working, leading the provider to change Plaintiff's medications. [Filing No. 15, at ECF p. 21-22.] Thus, even Plaintiff's discussion of the post-hearing evidence does not identify anything new or so significant to conclude that the ALJ acted unreasonably when she chose to forgo an optional second opinion. Additionally, having filed no reply brief, Plaintiff fails to rebut the Commissioner's argument that the post-hearing evidence was consistent with other records available at the time of the hearing and did not warrant further expert review. *See Christopher D. R. v. Bisignano*, No. 4:24-cv-00172-KMB-TWP, 2026 WL 1449945, at *2 (S.D. Ind. May 22, 2026) ("The Court may construe the failure to file a reply brief 'as an acknowledgement of the correctness' of the position of the party opposing the motion.").

For these reasons, Plaintiff has not shown that the ALJ erred in addressing Dr. Borden's opinions that Plaintiff's impairments met Listings 12.04 and 12.08.

**B. Opinions as to social limitations**

Plaintiff also argues that the ALJ erred when weighing the opinions related to Plaintiff's ability to interact and thereby failed to incorporate all social limitations in the RFC. [Filing No. 15, at ECF p. 23-27.] However, as discussed below, the ALJ adequately supported her assessment of those opinions and the RFC.

Ann Lovko, Ph.D., and Kenneth Neville, Ph.D., reviewed records and opined that Plaintiff "can relate on a superficial basis on an ongoing basis with co-workers and supervisors." [Filing No. 11-3, at ECF p. 9, 43.] The ALJ gave the opinions of Drs. Lovko and Neville "some weight" because they were generally consistent with the medical evidence, including essentially normal mental status exams. [Filing No. 11-14, at ECF p. 24-25.] However, the ALJ further explained that the records supported "some greater limitations" regarding interaction with others, such as those included in the RFC. [Filing No. 11-14, at ECF p. 25.] The ALJ's RFC contained the following limitations: occasional interactions with co-workers and supervisors for basic work tasks and questions but no work-related contact with the public; that Plaintiff works best independently of others or in small groups of three or four; no fast-paced production or quota work, and only occasional changes in the work environment. The ALJ explained that these limitations balanced evidence of Plaintiff's anger, irritability, and outbursts with other evidence of more passive behavior while on medication and improved anger control with non-family. She also explained that Plaintiff's low frustration tolerance and limited coping skills justified limitations as to production requirements and workplace changes.

Contrary to Plaintiff's argument, the ALJ did not fully adopt Drs. Lovko and Neville's opinions that Plaintiff could only engage in superficial interactions. Rather, she gave these opinions only "some weight." Moreover, even if the ALJ had adopted these opinions, the RFC

and vocational hypothetical need not reiterate the opinions verbatim. *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021) ("[T]he residual functional capacity analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("As a matter of form, the ALJ need not put the questions to the VE in specific terms—there is no magic words requirement. As a matter of substance, however, the ALJ must ensure that the VE is 'apprised fully of the claimant's limitations' so that the VE can exclude those jobs that the claimant would be unable to perform.").

Plaintiff argues that the RFC limits Plaintiff to "occasional" interactions with others and, therefore, only limits the quantity of social interactions, not the quality of interactions. [Filing No. 15, at ECF p. 25.] However, this argument ignores the other social limitations contained in the RFC and vocational hypothetical. The RFC also limits Plaintiff to only interactions related to "basic work tasks and questions"—a qualitative limitation. The vocational hypothetical contains a limitation that is substantively the same—limiting Plaintiff's occasional interactions to those regarding "basic job tasks and functions." Plaintiff does not address whether limiting Plaintiff to interactions related to basic work tasks is consistent with limiting him to superficial interactions or otherwise fails to encompass all of Plaintiff's limitations. Under the circumstances, the limitations of the RFC and vocational hypothetical are consistent with the evidence. Limiting interactions to those related to basic work tasks constrains the degree and extent of interactions to which Plaintiff would be exposed in the workplace and would preclude work involving "prolonged or meaningful conversations"—thereby mitigating a concern raised by Plaintiff. [Filing No. 15, at ECF p. 26 (citing *Green v. Saul*, No. 3:19-cv-00687-JD, 2020 WL 4593331, at *7 (N.D. Ind. Aug. 11, 2020)).]

Plaintiff also disagrees with the ALJ's assessment of the social interaction opinions of Michele Koselke, Ph.D., the state agency examiner who conducted Plaintiff's psychological testing in 2013 and 2016. In 2013, Dr. Koselke opined that Plaintiff could get along with others. Following additional testing in 2016, she opined that Plaintiff would have difficulty getting along with coworkers and supervisors due to his moderate depression, anxiety, and anger. The ALJ gave Dr. Koselke's 2013 opinion regarding social interaction "little weight," concluding that it was not supported by the record and was superseded by Dr. Koselke's 2016 opinion. [Filing No. 11-14, at ECF p. 26.] The ALJ gave Dr. Koselke's 2016 opinion "some greater weight" than the 2013 opinion. The ALJ noted that the opinion regarding Plaintiff's difficulty getting along with coworkers and supervisors was supported by the clinical interview and findings of Dr. Koselke's exam and reflected Plaintiff's difficulty with anger and irritability. Thus, the ALJ adequately explained her assessment of Dr. Koselke's opinions. Moreover, Plaintiff does not explain how the RFC's social limitations are inconsistent with Dr. Koselke's opinions.

Plaintiff raises additional arguments related to the Appeals Council's December 2, 2022, remand order. That order vacated the September 2021 decision and mandated further proceedings. [Filing No. 11-15, at ECF p. 35-37.] The ALJ who wrote the September 2021 decision assigned great weight to the opinions of Drs. Lovko, Neville, and Koselke but did not account for all limitations supported by those opinions in his RFC or otherwise explain that discrepancy. Despite the great weight allocated to the opinions limiting Plaintiff's interactions with supervisors, the prior RFC "contained only social limitations on interactions with coworkers and the public, not with supervisors." [Filing No. 11-15, at ECF p. 35-36.] However, unlike the 2021 decision, the current RFC contains limitations regarding interactions with supervisors and is supported by substantial evidence. Moreover, a new ALJ wrote the current decision after

considering additional treatment records and testimony. Much of the Appeal Council's remand order was premised on inconsistencies between the weight the prior ALJ allocated to medical opinions and the prior ALJ's RFC. The new ALJ was not obliged to weigh opinions the same as her predecessor. She issued a new RFC based on her own application of SSA guidelines, interpretation of the evidence, and rationale. The new ALJ complied with the optional and mandatory requirements of the December 2022 remand order. She considered medical opinions and explained the weight given to each; evaluated mental impairments; assessed an RFC and stated her rationale; obtained additional vocational and medical testimony; and issued a new decision. [*See* Filing No. 11-15, at ECF p. 36-37.] Plaintiff's claims that the May 2024 decision violated the remand order are without merit.

Accordingly, the ALJ adequately confronted opinion evidence of social limitations and incorporated those limitations in the RFC and vocational hypothetical.

**C. Opinion as to the need for supervision**

Last, Plaintiff argues that the ALJ erred by assigning "little weight" to the opinion of Ryan Oetting, Ph.D. [Filing No. 15, at ECF p. 27-30.] In May 2016, Dr. Oetting opined that Plaintiff needs "supervision in a full-time work capacity due to poor social skills and emotional dysregulation." [Filing No. 11-14, at ECF p. 22.] In the first unfavorable decision from March 2018, the initial ALJ gave great weight to Dr. Oetting's opinions but failed to incorporate any supervision requirement in the RFC or otherwise explain that discrepancy. The Appeals Council's January 17, 2020, remand order vacated the first unfavorable decision and required the SSA to further consider listings and the RFC and explain the weight given to Dr. Oetting's opinion. [Filing No. 11-9, at ECF p. 39-40.] Again, there was no obligation to assign the same weight to Dr. Oetting's opinion upon remand.

The ALJ's 2024 decision discussed the findings and resulting diagnoses of Dr. Oetting's psychological consultative exam. [Filing No. 11-14, at ECF p. 22.] When weighing Dr. Oetting's opinion, the ALJ explained that his opinion was "somewhat vague, as it would be normal for employees to need supervision in the workplace" and noted that Dr. Oetting failed to state the type or frequency of supervision needed. [Filing No. 11-14, at ECF p. 26-27.] Plaintiff argues that if the ALJ found Dr. Oetting's opinion vague, she should have asked Dr. Oetting to supplement his opinion or asked Dr. Borden or the vocational expert questions regarding this issue at the most recent hearing. [Filing No. 15, at ECF p. 27-30.] In support of this argument, Plaintiff cites only the Appeals Council's January 17, 2020, remand order and case law on an ALJ's duty to develop the record. [Id.]

The remand order required the ALJ to evaluate the opinion of Dr. Oetting pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and explain the weight given to that opinion and noted that "[a]s appropriate, the ALJ may require the non-treating source provide additional evidence and/or further clarification of the opinion" pursuant to 20 C.F.R. §§ 404.1520b and 416.920b. [Filing No. 15, at ECF p. 29 (quoting Filing No. 11-9, at ECF p. 39-40.)] However, the Commissioner argues that 20 C.F.R. § 404.1520b(b)(1) does not require an ALJ "to recontact a doctor when there is adequate evidence to render a decision." [Filing No. 18, at ECF p. 12-13.] Section 404.1520b(b)(1) states, "If any of the evidence in your case record, including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have." The Commissioner also cites *Jonathan C. v. O'Malley,* No. 4:22-cv-00150-KMB-TWP, 2024 WL 958020 (S.D. Ind. Mar. 6, 2024), in which the claimant argued that an ALJ erred by failing to seek clarification from an agency consultant regarding a vague opinion. The Court

affirmed the ALJ's decision. The Court noted that the claimant did not cite any authority requiring an ALJ to seek clarification and further concluded that "the ALJ had no duty to recontact or seek clarification from the consultative examiners" because the claimant "failed to offer any specific reasons why this vague opinion somehow renders the record inadequate or incomplete." *Id.* at *6. (citing *Britt*, 889 F.3d at 427); *see also* 20 C.F.R. § 404.1520b(b)(2)(i) (stating that if the record is insufficient to determine whether a claimant is disabled, then the SSA "may" recontact medical sources or request additional evidence or consultation).

The present case parallels *Jonathan C*. Plaintiff cites no authority requiring an ALJ to clarify an opinion deemed somewhat vague, nor does Plaintiff argue that, without clarification, the record is insufficient to determine the issue of disability.[1] Without a reply brief, the Court is without any rebuttal to the Commissioner's arguments. Moreover, as a practical matter, asking Dr. Oetting to elaborate on his opinion may be a fruitless endeavor given the years that have passed since Dr. Oetting examined Plaintiff.

As to the ALJ's duty to develop the record and the argument that the ALJ should have elicited additional testimony at the March 2024 hearing, both parties cite *Nelms v. Astrue*, 553

[1] Notably, 20 C.F.R. §§ 404.1519p or 416.919p address an ALJ's responsibility to review an agency examiner's report and recontact an examiner when a report is "inadequate or incomplete." Applying these regulations, courts in this Circuit have reached different conclusions on whether to remand when an ALJ discounted an examiner's opinion based on vagueness without recontacting the examiner for clarification. *See e.g., Mark R. v. Bisignano*, No. 1:25-cv-00572-TAB-SEB, 2026 WL 262130, at *3-4 (S.D. Ind. Feb 2, 2026) (remanding); *La'Toya R. v. Bisignano*, No. 1:24-cv-01564-JMS-TAB, 2025 WL 1413807, at *4-5 (S.D. Ind. May 15, 2025) (remanding); *but see Christopher D. R.*, 2026 WL 1449945, at *2-3 (upholding a decision under Fed. R. Civ. P. 59(e)); *Todd E. v. Bisignano*, No. 3:25-cv-50008, 2026 WL 323505, at *3-4 (N.D. Ill. Feb. 6, 2026) (affirming). However, the Court need not assess this nuanced issue because Plaintiff has not invoked § 404.1519p or § 416.919p. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[I]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (Internal quotations and citation omitted)).

F.3d 1093 (7th Cir. 2009). Plaintiff cites *Nelms* for the proposition that, even though the claimant bears the burden of proving disability, the ALJ has the duty to develop a full and fair record. [Filing No. 15, at ECF p. 29.] The Commissioner quotes *Nelms* for the proposition that a reviewing "'court generally upholds the reasoned judgment of the Commissioner on how much evidence to gather.'" [Filing No. 18, at ECF p. 13.] In *Nelms*, the Seventh Circuit remanded a case in which an ALJ was aware that an unrepresented claimant had treatment but failed to "gather any medical evidence to fill the two-year gap in the record." 553 F.3d at 1099. *Nelms* also explained that, even in cases involving *pro se* claimants, remand based on failure to develop the record requires a "significant omission." *Id.* at 1098. The claimant must show that the omission was prejudicial by "set[ting] forth specific, relevant facts—such as medical evidence—that the ALJ did not consider." *Id.*

In the present case, Plaintiff puts forth no evidence to suggest he was prejudiced by the ALJ's failure to clarify Dr. Oetting's opinion or supporting any specific supervisory restrictions. Dr. Oetting opined in 2016 that Plaintiff required supervision in the workplace, without stating the extent of supervision needed. Dr. Koselke examined Plaintiff twice, and Drs. Lovko and Neville reviewed Plaintiff's records. None of these medical professionals opined that Plaintiff required supervision. Thus, Plaintiff fails to put forth evidence in support of (or even propose) any specific supervisory limitations for the RFC. *See Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019) ("[E]ven if the ALJ's RFC assessment were flawed, any error was harmless" because "[i]t is unclear what kinds of work restrictions might address [the claimant's] limitations . . . because he hypothesizes none.").

Additionally, "[a]lthough an ALJ has a duty to develop the record, '[w]hen an applicant is represented by counsel the administrative law judge is entitled to assume that the applicant is

making his strongest case for benefits.'" *Dora v. Astrue*, No. 1:08-cv-387-SEB-TAB, 2009 WL 3060224, at *7 (S.D. Ind. Sept. 22, 2009) (quoting *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987)); *see also Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) ("[A] claimant represented by counsel is presumed to have made his best case before the ALJ[.]"). Plaintiff argues that the ALJ should have asked Dr. Borden and the vocational expert questions regarding limitations related to supervision at the latest hearing. However, Plaintiff was aware of the vagueness issue—the September 2021 decision also found Dr. Oetting's supervision opinion to be vague. [Filing No. 11-8, at ECF p. 19.] Yet, Plaintiff's counsel also failed to seek clarity at the hearing.

Finally, the ALJ did not discount Dr. Oetting's opinion on vagueness alone. *See Jonathan C.*, 2024 WL 958020, at *6 ("[T]he ALJ did not rely solely on vagueness in his analysis but rather provided a thorough review of the consultative examiners' opinions and explained how he weighed such opinions in light of the rest of the record evidence. This is not reversible error."). Rather, the ALJ identified substantial evidence supporting her evaluation of this opinion. She noted evidence inconsistent with Dr. Oetting's opinion, including Plaintiff's reported ability to finish mowing and treatment records showing that Plaintiff exhibited greater anger control when interacting with non-family members and that he was more passive and cooperative with medication. Thus, the ALJ adequately explained her assessment of Dr. Oetting's opinion, consistent with the January 2020 remand order.

In sum, courts apply a deferential standard to an ALJ's assessment of medical opinions and cannot substitute their judgment of the evidence for that of the ALJ. In her May 2024 decision, the ALJ minimally articulated and adequately supported her assessment of the opinion evidence and, therefore, did not err.

## III. Conclusion

For these reasons, Plaintiff's request for remand should be denied. [Filing No. 15.] Any objection to the magistrate judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within 14 days shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 8/12/2026

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email